Not for Publication

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TSAKOS, INC. t/a HANOVER MANOR,<br><br>Plaintiff,<br><br>v.<br><br>CITIZENS INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | Civil Action No.: 20-8889 (ES) (CLW)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Presently before the Court is defendant Citizens Insurance Company of America's ("Defendant") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (D.E. No. 16 ("Motion")). Having considered the parties' submissions, the Court resolves the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, the Motion is GRANTED.

I.   BACKGROUND AND PROCEDURAL HISTORY

This putative class action is yet another of the many analogous cases filed in this District, and in courts throughout the country, by an insured seeking coverage under its commercial insurance policy for alleged losses caused by the ongoing COVID-19 pandemic and government measures taken in response.

Plaintiff Tsakos, Inc., trading as Hanover Manor, ("Plaintiff") is a family-owned catering business which operates the Hanover Manor, a large event venue in East Hanover, New Jersey.

(D.E. No. 1 ("Compl." or "Complaint") ¶ 14; D.E. No. 18 ("Pl. Opp. Br.") at 1).[1] When the state of New Jersey and other state governments issued stay-at-home and business-shutdown orders (generally, the "Closure Orders") throughout 2020 to minimize the spread of COVID-19, Plaintiff had to close its facility and cease operations. (Compl. ¶¶ 15, 32 & 46–47). Plaintiff maintains "[t]he result of these far-reaching restrictions and prohibitions has been catastrophic for most non-essential businesses, . . . who have been forced to close, furlough employees, and endure a sudden shutdown of cash flow that threatens their survival." (*Id.* ¶ 4). Plaintiff likewise maintains it "suffered a direct physical loss of and damage to [its] property" because it was unable to use the property for its intended purpose. (*Id.* ¶ 41).

To recoup losses in income and other expenses incurred, Plaintiff sought to recover under its all-risk commercial property insurance policy, Policy No. ZBY D131839 03, (D.E. No. 16-4 (the "Policy")) issued by defendant Citizens Insurance Company of America ("Defendant") for the policy period January 1, 2020, through January 1, 2021.[2] (Compl. ¶¶ 18 & 33). The Policy broadly provides that Defendant "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Policy at 112 § A)).[3] The applicable Causes of Loss–Special Form defines

---

[1] Plaintiff's Complaint states only that Plaintiff "is a New Jersey corporation with its principal place of business in East Hanover, New Jersey," without offering any information as to the nature of its business. (Compl. ¶ 14). While the Court ordinarily does not look to matters extraneous to the pleadings on this type of motion, *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), it considers, solely for the purpose of context, Plaintiff's statement in its opposition brief that it "is a family owned catering business which operates the Hanover Manor." (Pl. Opp. Br. at 1).

[2] According to the Complaint, Defendant Citizens Insurance Company of America is a Michigan corporation with its principal place of business in Howell, Michigan, and is a subsidiary of Hanover Insurance Group, Inc., licensed to issue insurance in the state of New Jersey and other states. (Compl. ¶ 17). The Complaint initially named Hanover Insurance Group, Inc. as a defendant, and uses "Hanover" to refer to both defendants collectively. (*See* Compl. at 1 ("together 'Defendants' or 'Hanover'")). Because Plaintiff later voluntarily dismissed this action as to Hanover Insurance Group, Inc., *without prejudice*, (D.E. No. 9), the Court construes the allegations as against Defendant Citizens Insurance Company of America alone.

[3] Although Plaintiff did not attach a copy of the Policy to the Complaint, the Policy is nonetheless "integral to or explicitly relied upon" therein. (*See* Compl. ¶¶ 36–40 & 43). Thus, the Court may properly consider it without converting Defendant's motion into one for summary judgment. *See Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d

Covered Causes of Loss to mean "direct physical loss unless the loss is excluded or limited in this policy." (*Id.* at 136 § A).

The Policy also provides for what is known as "business interruption insurance," which encompasses certain additional coverage for lost business income and extra expenses incurred. (Compl. ¶ 35). Under these coverage provisions, Defendant will pay for lost "Business Income" and "Extra Expense" incurred "due to the necessary 'suspension' of" business operations. (Policy at 34 §§ A.1 & A.2). "[S]uspension," means "[t]he slowdown or cessation of [Plaintiff's] business activities," "must be caused by direct physical loss of or damage to [the Covered Property]," and "[t]he loss or damage must be caused by or result from a Covered Cause of Loss." (*Id.* at 40 § E.6; *id.* at 34 §§ A.1 & A.2.b). In yet another provision, the Policy extends the Business Income and Extra Expense coverage to circumstances where action of a "Civil Authority" "prohibits access to the [Covered Property] due to direct physical loss of or damage to property, other than at the [Covered Property], caused by or resulting from any Covered Cause of Loss." (*Id.* at 35 § A.5.a).

Notwithstanding the foregoing coverage, the Policy expressly contains an "Exclusion of Loss Due to Virus or Bacteria" (the "Virus Exclusion"). (*Id.* at 130). The Virus Exclusion states, in relevant part:

> A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.
>
> B. [Defendant] will not pay for loss or damage *caused by or resulting from any virus*, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

---

251, 256 n.5 (3d Cir. 2004), *as amended* (Mar. 8, 2004). In lieu of citing to the Complaint's recitations of the Policy language, the Court cites directly to the Policy attached as Exhibit 2 to the Certification of Jeremiah L. O'Leary (D.E. No. 16-2), in support of Defendant's motion for judgment on the pleadings. The Court cites to the Policy's page numbers that correspond to the Bates Stamp generated in the lower-righthand corner of the document (*i.e.*, Bates Stamp page CP 000112 becomes 112).

3

(*Id.*) (emphasis added). By way of letter dated June 11, 2020, Defendant denied Plaintiff's claim for coverage under the Business Income, Extra Expense, and Civil Authority provisions for losses sustained from the Closure Orders. (Compl. ¶ 45).

On July 14, 2020, Plaintiff, on behalf of itself and all similarly situated entities with coverage under an all-risk commercial property insurance policy issued by Defendant, filed this putative class action. (*See generally*, Compl.). Plaintiff brings three breach of contract claims, asserting that Defendant breached its obligations to provide coverage under the Policy's business income, civil authority, and extra expense provisions. (*Id.* ¶¶ 70–79, 87–94 & 102–109). Plaintiff brings an additional three claims seeking declarations that "losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from those Orders are covered losses" under these same three provisions. (*Id.* ¶¶ 63–69, 80–86 & 95–101). Plaintiff brings all claims individually and on behalf of a proposed national class and New Jersey sub-class of businesses with the same insurance policy "who have suffered losses due to measures put in place by civil authorities' stay-at-home or shelter-in-place orders since March 15, 2020." (*Id.* ¶¶ 51 & 63–109).

On October 2, 2020, Defendant filed an answer to the Complaint. (D.E. No. 4). On March 12, 2021, Defendant moved for judgment on the pleadings on all six claims. (D.E. No. 16). The motion is now fully briefed and ripe for determination. (D.E. Nos. 16-1, 18 & 21). The Court is also in receipt of Defendant's supplemental authorities (D.E. No. 25) and Plaintiff's response thereto (D.E. No. 26).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. When adjudicating such a motion, the Court applies the same standard as that under Rule 12(b)(6). *See Wolfington v. Reconstructive Orthopaedic Assocs.*

*II PC*, 935 F.3d 187, 195 (3d Cir. 2019); *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). That is, the Court must accept "all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). And the Court must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6), or as here, a Rule 12(c), motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court "may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).

### III. DISCUSSION

Defendant primarily argues that it is entitled to a judgment on the pleadings because (i) Plaintiff has failed to establish that its claim falls within the scope of the Policy because it has failed to allege any physical loss of or damage to its insured property; and (ii) the Policy's Virus

5

Exclusion precludes coverage for losses caused by the COVID-19 virus, including losses resulting from COVID-19-related Closure Orders. (*See generally* D.E. No. 16-1 ("Def. Mov. Br.")). In response, Plaintiff argues (i) the inability to use its insured property for its intended purpose, regardless of whether the property suffered physical damage or alteration, constitutes a "direct physical loss" covered under the Policy; and (ii) the Policy's Virus Exclusion does not operate to bar Plaintiff's claims because the Closure Orders, not the COVID-19 virus itself, were the "efficient proximate cause" of its losses. (*See generally* Pl. Opp. Br.).

Whether Plaintiff's losses are covered under the Policy is a question of contract interpretation. *See Podiatry Foot & Ankle Inst. P.A. v. Hartford Ins. Co. of Midwest*, No. 20-20057, 2021 WL 1326975, at *2 (D.N.J. Apr. 9, 2021) (citing *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, LLC*, 143 A.3d 273, 280 (N.J. 2016)). Under New Jersey law, which neither party disputes applies here, the language of an insurance policy is interpreted according to its plain and ordinary meaning. *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (citing *Ambrosio v. Affordable Auto Rental, Inc.*, 704 A.2d 572, 575 (N.J. 1998)). The Court is bound to enforce clear, unambiguous policy terms as they are written, but any ambiguities are generally resolved in favor of the insured. *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288–89 (3d Cir. 2004).

Similar interpretive rules apply with respect to exclusionary clauses within an insurance policy. Such clauses "are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (quoting *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997)). "If the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (quoting *Longobardi v. Chubb Ins. Co.*, 582 A.2d 1257, 1260 (N.J. 1990)). A complaint may be properly dismissed where it is clear the

plaintiff's allegations "fall squarely within the policy's exclusion to coverage." *N&S Restaurant LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 78 (D.N.J. 2020).

Since mid-2020, courts in this District have repeatedly applied these well-established principles in insurance coverage cases identical to this one, where a plaintiff, often a local business—like Plaintiff here—has unfortunately suffered enormous loss as a result of the ongoing COVID-19 pandemic and the related restrictions implemented to protect public health and safety. In applying these contract principles, mindful of their obligation to enforce the terms of insurance policies as written, courts in this District have overwhelmingly held that virus exclusions bar claims for losses sustained from the Closure Orders. *See, e.g.*, *Caterer's in the Park, LLC v. Ohio Sec. Ins. Co.*, No. 20-6867, 2021 WL 4994463, at *2 n.4 (D.N.J. Oct. 26, 2021) (collecting cases); *Beniak Enterprises, Inc. v. Indem. Ins. Co. of N. Am.*, No. 20-5536, 2021 WL 3783257, at *4 (D.N.J. Aug. 26, 2021) (collecting cases from within the Third Circuit). Thus, despite Plaintiff's additional arguments concerning direct physical loss of its property, the Court's analysis begins and ends with the applicability of the Policy's Virus Exclusion to Plaintiff's claims for coverage. *See T & L Catering, Inc. v. Hanover Ins. Grp., Inc.*, No. 20-07934, 2021 WL 2948425, at *4 (D.N.J. July 14, 2021) (finding it unnecessary to address arguments concerning direct physical loss or civil authority coverage where the virus exclusion applied and completely barred coverage); *Benamax Ice, LLC v. Merchant Mutual Ins. Co.*, 529 F. Supp. 3d 350, 356 (D.N.J. 2021) (noting same and collecting cases).

Plaintiff argues that the Virus Exclusion's "*caused by or resulting from* any virus" language is not anti-concurrent-clause language that would exclude coverage regardless of the sequence of events leading up to Plaintiff's losses. (Pl. Opp. Br. at 4–11). In making this argument, Plaintiff invokes Appleman's Rule, the efficient proximate cause test that New Jersey courts apply "[w]hen there is a conflict as to whether, for coverage purposes, losses should be considered to be 'caused

7

by' an excluded risk or by a covered peril." *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1192 (N.J. Super. Ct. App. Div. 2019), *aff'd*, 243 A.3d 1248 (N.J. 2021). "Under this test, if an exclusion 'bars coverage for losses *caused by* a particular peril, the exclusion applies *only if* the excluded peril was the efficient proximate cause of the loss.'" *Id.* (quoting *Zurich Am. Ins. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007)) (emphasis in original). Thus, absent an anti-concurrent or anti-sequential clause in the applicable exclusion, under Appleman's Rule, "an insured is normally afforded coverage where an included cause of loss is either the first or last step in the chain of causation which leads to the loss." *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-08595, 2021 WL 1138141, at *5 (D.N.J. Mar. 25, 2021) (quotations omitted). The pertinent question, however, "is not where in the sequence the alleged cause of loss occurred, but what was the predominant cause that produced the loss." *Causeway Automotive, LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917, at *5 (D.N.J. Feb. 10, 2021).

Here, the Virus Exclusion does not contain an anti-concurrent clause that would exclude coverage regardless of the sequence of events leading up to Plaintiff's losses. (*See* Policy at 130). Nonetheless, this does not mean that the Closure Orders were necessarily the efficient proximate cause of those losses merely because they were last in a series of events which lead to the closure of Plaintiff's business. It is indisputable that the Closure Orders were issued solely to mitigate the spread of COVID-19, "and would not have been issued but for the presence of the virus in the State of New Jersey." *Id.* at *5; *see also 7th Inning Stretch LLC v. Arch Ins. Co.*, No. 20-8161, 2021 WL 800595, at *3 (D.N.J. Jan. 19, 2021). Plaintiff likewise acknowledges this connection in its Complaint by alleging that the Closure Orders were issued "to protect the health and safety of their residents from the human to human and surface to human spread of COVID-19." (Compl. ¶ 3; *see also id.* ¶ 31 ("[B]ecause [CDC] recommendations have proven ineffective to minimize

8

the spread of COVID-19, containment efforts have led to civil authorities issuing orders closing many business establishments . . . .")). To that end, and consistent with the ever-growing list of courts within and outside this District that have analyzed similar or identical virus exclusions, this Court finds that the COVID-19 virus and Closure Orders were not two separate, independent events contributing to a loss, but rather were inextricably intertwined, such that the latter were entirely dependent and preconditioned on the existence of the former. The predominant and proximate cause of Plaintiff's business-related losses is therefore the COVID-19 virus, not the Closure Orders that were issued in response thereto. *See, e.g.*, *Cedar Run Orthodontics, P.A. v. Sentinel Ins. Co., Ltd.*, No. 20-8156, 2021 WL 5083814, at *3 (D.N.J. Nov. 1, 2021) (stating "[t]here is near unanimous agreement in this district that virus exclusion provisions . . . apply to bar coverage for claims of losses resulting from the COVID-19 pandemic and associated civil authority orders," and collecting cases); *Caterer's in the Park*, 2021 WL 4994463, at *2 n.4 (D.N.J. Oct. 26, 2021) (stating that "[t]he weight of authority adopting this position is staggering," and collecting cases); *T & L Catering, Inc.*, 2021 WL 2948425, at *4 (stating "the Covid-19 virus is the proximate cause of Plaintiff's losses here, not the Closure Orders. . . . Plaintiff cannot escape the conclusion that the Closure Orders were issued in response to the Covid-19 virus"). As such, the Virus Exclusion completely bars coverage for Plaintiff's losses.[4]

### IV. CONCLUSION

The Court understands and is sympathetic to Plaintiff's circumstances. Plaintiff, like countless others, has suffered enormous loss as a result of the COVID-19 pandemic, threatening not just Plaintiff's livelihood, but the continued vibrance and success of our local communities. Notwithstanding this reality, however, the Court is not free to rewrite the terms of the Policy and

---

[4] Because Plaintiff has failed to state an individual claim, its claims on behalf of the proposed classes also fail and the Complaint is dismissed in the entirety. *See Eye Care Ctr. of N.J., PA v. Twin City Fire Ins. Co.*, 522 F. Supp. 3d 72, 78 (D.N.J. 2021).

9

is obligated to enforce the terms thereof as written.

Accordingly, for the reasons stated above, Defendant's Motion for Judgment on the Pleadings is GRANTED and Plaintiff's Complaint is DISMISSED *with prejudice*. An appropriate Order accompanies this Opinion.


Dated: March 1, 2022                                               <u>s/ *Esther Salas*       </u>
                                                                   **Esther Salas, U.S.D.J.**